IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GEORGE HRDINA,

    Plaintiff,

  v.

WORLD SAVINGS BANK, FSB; WORLD SAVINGS, INC.; WACHOVIA MORTGAGE CORPORATION; and DOES 1 through 6, inclusive,

    Defendants.

No. C 11-05173 WHA

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Defendants move to dismiss for failure to state a claim upon which relief may be granted. For the reasons stated below, the motion is **DENIED IN PART** and **GRANTED IN PART**.

## STATEMENT

*Pro se* plaintiff George Hrdina is an individual homeowner residing in Alamo, California. Defendants are World Savings Bank, FSB, World Savings, Inc., and Wachovia Corp. Defendants are involved in the mortgage business. In August 2007, Mr. Hrdina entered into an Option ARM loan agreement with defendants for the refinancing of his principal residence. He alleges that: (1) defendants violated the Truth in Lending Act by failing to clearly and conspicuously inform plaintiff of the interest rates upon which the payment schedule was based and the possibility of negative amortization as required by 12 C.F.R. 226.17–19; (2) defendants fraudulently omitted information in the provided disclosures regarding the applicable interest rates; and (3) defendants violated California's Unfair Competition Act by failing to provide adequate information about the

loan, thus giving defendants an unfair competitive advantage (Compl. ¶¶ 2–41). Plaintiff is seeking statutory damages and rescission of the mortgage agreement for his claims under TILA, punitive damages for violations of California Civil Code Section 1572(3), and restitution for his claims under California Business and Professions Code Section 17200. In the alternative, plaintiff seeks modification of the existing loan (*id.* ¶¶ 42–43, 46). Plaintiff filed this action in Contra Costa County Superior Court. It was removed pursuant to 28 U.S.C. 1441(b). Defendants now move to dismiss pursuant to FRCP 12(b)(6).

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50. *Pro se* complaints are held to less stringent standards than complaints drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**1. TILA SECTION 1640(e) CLAIM.**

Section 1640(e)'s one-year statute of limitations is subject to tolling. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Where "named plaintiffs asserted claims that were 'typical of the claims or defenses of the class' and would 'fairly and adequately protect the interests of the class,' the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. Thus, the commencement of the [class] action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550–51 (1974) (internal citations omitted). "[W]hen certification has been granted, the statute begins running anew from the date when the class member exercises the right to opt out . . . ." *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) (internal citations omitted).

Plaintiff alleges that participation in a class action and his subsequent opt-out is sufficient cause to toll the applicable statute of limitations (Opp. 3). First, it should be noted that the parties dispute the date the refinancing agreement was consummated. Defendants argue that the date was August 10, 2007, but plaintiff asserts that the date was August 16, 2007 (Br. 7; Opp. 3). For the reasons stated below, this dispute is immaterial.

Plaintiff's claim regarding deficiencies in the initial disclosures arose sometime between August 10 and August 16, 2007. Thus, the applicable statute of limitations began to run sometime between that period. During that same month, the *Mandrigues v. World Savings, Inc.* class-action complaint was filed. 2007 WL 2915318 (August 30, 2007). Plaintiff would ultimately become a class member of, *Mandrigues*, which involved the same claims under Section 1640(e) and Section 1635(f) (Supp. RJN Exh. A ¶ 49). The *Mandrigues* action was subsequently combined with *In re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation*, which consolidated similar class complaints and individual complaints that had been filed in multiple districts. 2011 WL 1877630, at *1 (May 17, 2011). At a final settlement conference hearing for the *Pick-A-Payment* case, which took place on April 29, 2011, Mr. Hrdina orally opted out of the settlement agreement (Dkt. No. 17 at Exh. A at 1).

There is no dispute that plaintiff was part of a class action for the same underlying claims for relief asserted here. The plaintiff in *Mandrigues* asserted claims for violations of TILA for failing to clearly and conspicuously disclose that the payment schedules were not based on the actual interest rates, what the actual interest rates were, and the possibility of negative amortization (Supp. RJN Exh. A ¶¶ 49–78). Plaintiff Hrdina asserts the same (Compl. ¶¶ 26–32). The *Madrigues* case, which began August 30, 2007, tolled the applicable statute of limitations for plaintiff's claim. Applying the *American Pipe* rule, the statute of limitations for plaintiff's claim began to run in August 2007, was tolled for the period between August 30, 2007, and April 29, 2011, because of the *Mandrigues/Pick-A-Payment* class action, and began to run again on the date plaintiff opted out of the settlement agreement — April 29, 2011. Consequently, plaintiff had until approximately April 9, 2012, to file his Section 1640(e) claim. Plaintiff filed his complaint on August 11, 2011, *well* within the applicable statute of limitations.

3

Defendants contend that the underlying policy of the *American Pipe* rule would be frustrated by finding the statute of limitations for plaintiff's claim tolled (Reply Br. 4–5). This order disagrees. The policy behind *American Pipe* was that because a class claim had been asserted by a class representative, the defendants were effectively put on notice of all potential claims against them, and, therefore, any equitable considerations to be weighed in the defendants' favor regarding the burden of litigating stale claims were no longer implicated. 414 U.S. at 554–55. Defendants argue that plaintiff's loan varied in substance compared to the loan at issue in the *Mandrigues* case and because of this, defendants did not receive the type of notice of potential claims and claimants required by *American Pipe* (Reply Br. 4–5). However, *American Pipe* does not require exact duplication of potential claims at the time the class action is filed; it only requires that:

> [A] named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the *potential* plaintiffs who *may* participate in the judgment. Within the period set by the statute of limitations, [so long as] the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation [the statute of limitations is tolled.]

414 U.S. at 554–55 (emphasis added). It is incorrect for defendants to both admit that "[plaintiff's] loan shares a few of [the] characteristics" at issue in *Mandrigues* and then argue that, because of the nuanced differences between plaintiff's loan and the loan at issue in *Mandrigues*, plaintiff is precluded from the protection of *American Pipe* tolling (Reply Br. 4–5). *American Pipe* stated that where the litigation gave the defendants notice of the "*potential* plaintiffs who *may* participate . . . [and] the essential information necessary to determine . . . the subject matter [of the litigation]," tolling applies. 414 U.S. at 554–55 (emphasis added). "Potential" and "may" are not words of pinpoint precision. Defendants concede that *Mandrigues* involved claims under TILA Section 1640(e) and Section 1635(f) which arose from "Option ARM" loans with characteristics similar to those of plaintiff's loan (Reply Br. 4–5). It follows that defendants had the knowledge necessary to determine that other plaintiffs, like Hrdina, with Option ARM loans bearing similar characteristics *may* be included in the class, as they indeed ultimately were. That

4

is enough.

Defendants' other arguments in support of dismissal are therefore immaterial. For the foregoing reasons, defendants' motion to dismiss plaintiff's Section 1640(e) claim is **DENIED**.

### 2. TILA SECTION 1635(f) CLAIM.

The right of rescission under Section 1635(f) expires three years "after the loan closes or upon the sale of the secured property, whichever date is earlier." "[Section] 1635(f) is a statute of *repose*, depriving the courts of subject matter jurisdiction when a [Section] 1635 claim is brought outside the three-year limitation period." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (emphasis added). "Among the issues on which there is no consensus is whether *American Pipe* tolling should be characterized as a legal tolling doctrine or as an equitable one. Because it is generally accepted that '[s]tatutes of repose are not subject to equitable tolling,' whether *American Pipe* sets forth a legal or equitable tolling doctrine takes on special importance in the context of a statute of repose." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 535 (9th Cir. 2011) (internal citations omitted).

Plaintiff's Section 1635(f) claim arose at the same time his Section 1640(e) claim did. The issue here is whether the *American Pipe* rule, as applied above to toll plaintiff's Section 1640(e) claim, will also serve to toll his Section 1635(f) claim. Our court of appeals has not answered this question with regard to federal statutes of repose. In *Albano*, our court of appeals considered the applicability of *American Pipe* to a state statute of repose, and ultimately certified the question to the Arizona Supreme Court. Before concluding that the issue was one for certification, the court engaged in a survey of federal opinions that have examined the issue. While there was no controlling precedent on the issue, "the weight of federal authority favors the view that [the] *American Pipe/Crown, Cork* rule should be characterized as a rule of statutory tolling;" this included the Tenth Circuit and the Federal Circuit. *Id.* at 538. The reasoning of the Tenth Circuit is persuasive. In considering the application of *American Pipe* to a federal securities-fraud statute of repose the court stated:

> Tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose. Statutes of limitation are intended to protect defendants from being unfairly surprised by the appearance of stale claims, and

5

> to prevent plaintiffs from sleeping on their rights. These ends are met when a class action is commenced. In this case, because a class action complaint was filed, defendants were on notice of the substantive claim as well as the number and generic identities of potential plaintiffs. Defendants cannot assert [plaintiff's] claim was stale or that he slept on his rights.
>
> Statutes of repose are intended to demarcate a period of time within which a plaintiff must bring claims or else the defendant's liability is extinguished. Here, the claim was brought within this period on behalf of a class of which [the plaintiff] was a member. Indeed, in a sense, application of the *American Pipe* tolling doctrine to cases such as this one does not involve "tolling" at all. Rather, [the plaintiff] has effectively been a party to an action against the[] defendants since a class action covering him was requested but never denied. Defendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved. Consequently, we conclude that *American Pipe* tolling applies to the statute of repose governing [the plaintiff's] action.

*Joseph v. Wiles*, 223 F.3d 1155, 1167–68 (10th Cir. 2000) (internal citations and quotations omitted); *see also Bright v. United States*, 603 F.3d 1273, 1287–88 (Fed. Cir. 2010) (referring to class-action tolling as statutory rather than equitable). This order agrees.

Defendants' reliance on *Miguel* and *Beach* is misplaced. Those cases only stand for the proposition that Section 1635(f) is a statute of repose, a proposition not in dispute. Neither case addressed the applicability of *American Pipe* to Section 1635(f), the issue considered and decided herein. Therefore, defendants' remaining arguments in support of dismissal are immaterial. Based on the above reasoning, defendants' motion to dismiss plaintiff's Section 1635(f) claim is also **DENIED**.

### 3. HOLA PREEMPTION.

Defendants argue that both of plaintiff's state-law claims are preempted by the Office of Thrift Supervision regulations (Br. 5–9). In support of this contention, defendants offer public records evidencing that their loans were issued by World Savings Bank, FSB (RJN Exhs. A, B). Plaintiff does not challenge this assertion, and judicial notice will be taken of these documents. World Savings Bank, FSB was governed by OTS when it originated the loan and, therefore, HOLA applied at the time the loan originated. The issue is whether the same regulations, and consequently preemption, applies to Wachovia Mortgage, a division of Wells Fargo N.A., which is not governed by OTS, but is a successor by merger to World Savings Bank, FSB. This judge

6

has previously held, on similar facts, that where a loan originated with a federally-chartered savings bank which subsequently merged with a national bank, HOLA applied to the loan in question. *Johannson v. Wachovia Mortgage FSB*, Case No. C 11–02822, 2011 WL 3443952, at *8 (August 5, 2011). This analysis will be retraced in the next section.

### A. Preemption Analysis.

HOLA authorizes federally-chartered savings associations. 12 U.S.C. 1461, 1464. In enacting HOLA, Congress established OTS and gave its director plenary authority to issue regulations governing federal savings associations. 12 U.S.C. 1462a. In 1996, OTS issued 12 C.F.R. 560.2(a), which stated that "OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations," and that "OTS hereby occupies the entire field of lending regulation for federal savings associations." Laws that are preempted by this regulation include those covering terms of credit, amortization, deferral and capitalization of interest, interest rate adjustments, loan-related fees and penalties, disclosures and advertising, and processing and origination of mortgages. 12 C.F.R. 560.2(b). The same regulation provides exceptions that describe certain state laws of general applicability that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of [the regulation]." 12 C.F.R. 560.2(c).

OTS "specifically defined a proper preemption test to be employed" by promulgating Section 560.2. *Aguayo v. U.S. Bank*, 653 F.3d 912, 922 (9th Cir. 2011). The regulation states:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. *Any doubt should be resolved in favor of preemption.*

61 Fed. Reg. 50,951-01, 50,966–67 (Sept. 30, 1996) (emphasis added). Our court of appeals gives the OTS's construction of Section 560.2 "controlling weight." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 n.1 (9th Cir. 2008). *Silvas* involved claims for relief based on

7

misrepresentations in advertising, and disclosures in loan documents alleged to have violated the California Unfair Competition Act. Our court of appeals held that where a state-law claim is predicated on a misrepresentation in loan disclosures, the state-law claim will be preempted. Because both of the plaintiff's claims were entirely based on disclosures and advertising, they were explicitly preempted by Section 560.2(b). The court rejected the plaintiff's argument that the claims were not preempted because they were state laws of general applicability with only incidental effects on lending. It held that where the claims "are based on types of laws listed in [560.2(b)]," there is no need to consider Section 560.2(c). *Id.* at 1006. So too here.

### B. Preemption of Plaintiff's State-Law Claims.

Plaintiff's state-law claims are based on allegations that defendants fraudulently omitted information in the provided disclosures regarding the applicable interest rates and defendants violated California's Unfair Competition Act by failing to provide adequate information about the loan, thus giving defendants an unfair competitive advantage (Compl. ¶¶ 36–37, 40–41).

Applying OTS's framework to plaintiff's claims, these state-law claims are expressly preempted by 12 C.F.R. 560.2(b). 12 C.F.R. Sections 560.2(b)(4) and (9) preempt "state laws purporting to impose requirements regarding . . . [t]he terms of credit, including amortization of loans and . . . [d]isclosure and advertising . . . ." Plaintiff's fraud claim and unfair business practices claim challenge defendants' lending practices directly by alleging that defendants engaged in deceitful and fraudulent behavior in preparing and distributing their loan disclosures (Compl. ¶¶ 33, 40). In addition, plaintiff's claims also bear a similarity to the claims at issue in *Silvas* which were found to be expressly preempted by 12 C.F.R. 560.2(b). *Silvas*, 514 F.3d at 1006. Under *Silvas*, and in compliance with the OTS regulations, the analysis ends here.

While it is true that this judge in the past has rejected preemption arguments raised in a motion to dismiss, it was on claims distinguishable from those at issue here. *See Lopez v. Wachovia Mortgage*, Case No. C 10-01645, 2010 WL 2836823 (July 19, 2010); *Johannson*, 2011 WL 3443952. In *Lopez*, the plaintiff alleged that the defendants engaged in verbal misrepresentations and fraudulent inducement, and coerced the plaintiff into signing a loan written in a language he did not understand. While the plaintiff's claims may have had an

8

1 incidental effect on the defendants' lending practices and disclosures, lending practices and
2 deficient disclosures were not the crux of the plaintiff's complaint. Based on what had been
3 pleaded, preemption was inappropriate at that stage of the case. *Lopez*, 2010 WL 2836823, at
4 *3–4. Similarly, *Johannson* involved claims of verbal misrepresentation and material fraud in the
5 creation of the loan application, in order to "get the loan approved." Furthermore, there were
6 allegations that the defendants fraudulently induced the plaintiff to sign her loan documents.
7 *Johannson*, 2011 WL 3443952, at *8–9. Dismissal based on preemption was again unwarranted.
8 The allegations, both in *Lopez* and *Johannson*, went beyond deficiencies in the disclosures and
9 documents.

Plaintiff's claims here are of a different breed, distinguishable from those in *Lopez* and *Johannson*, and more closely resembling those at issue in *Silvas*. Where allegations hinge on deficiencies in the disclosures themselves, as they do here, preemption is warranted. Defendants' motion to dismiss plaintiff's state-law claims pursuant to HOLA preemption is **GRANTED**.

### 4. PLAINTIFF'S REMAINING UNDEVELOPED CLAIMS.

Claims for "Violations of Truth in Lending" and "Breach of the Covenant of Good Faith and Fair Dealings" appear on the cover of plaintiff's complaint, but are not sufficiently alleged within the complaint. Plaintiff may seek leave to amend his complaint if he wishes to further develop these claims but both claims must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

### 5. JUDICIAL NOTICE OF DOCUMENTS.

Defendants have requested that judicial notice be taken of the following documents: (1) a Deed of Trust dated August 10, 2007, and recorded August 21, 2007, in the Contra Costa County Recorder's Office; (2) an Adjustable Rate Mortgage Note 3 Year Fixed Rate Pick-A-Payment Loan that was signed August 10, 2007 and referenced by plaintiff in his complaint; (3) a Deed of Trust dated August 10, 2007, and recorded August 21, 2007, in the Contra Costa County Recorder's Office; and (4) a World Savings Equity Line of Credit Agreement and Disclosure Statement dated August 10, 2007, and referenced by plaintiff in his complaint (RJN 3–4).

9

Plaintiff does not object.  Defendants have also filed a supplemental request for judicial notice requesting that the class-action complaint of *Mandrigues v. World Savings, Inc., et al.*, filed on August 30, 2007, be taken notice of (Supp. RJN 1).

Because Exhibits A, C, and supplemental Exhibit A are public records and the authenticity of the documents is capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned, pursuant to Federal Rule of Evidence 201(b), defendants' request for judicial notice as to these Exhibits is **GRANTED**.  A document not attached to a complaint "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Because plaintiff relies extensively on Exhibits B and D for the basis of his claim, defendants' request for judicial notice as to Exhibits B and D is **GRANTED**.

**CONCLUSION**

For the foregoing reasons:  (1) defendants' motion to dismiss plaintiff's Section 1640(e) claim is **DENIED**; (2) defendants' motion to dismiss plaintiff's Section 1635(f) claim is **DENIED**; (3) defendants' motion to dismiss plaintiff's state-law claims is **GRANTED**.

Plaintiff may seek leave to amend and will have **21 CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint in order to further develop his claims for "Violations of Truth in Lending" and "Breach of the Covenant of Good Faith and Fair Dealings."  A proposed amended complaint must be appended to the motion and plaintiff must plead his best case.  The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.  Plaintiff, who is proceeding *pro se*, is advised that information is available online at http://cand.uscourts.gov/proselitigants and also in person at the legal help center.  An appointment with the legal help center may be made by calling 415-782-9000, extension 8657.

**IT IS SO ORDERED.**

Dated: January 31, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE